**\*\* E-filed August 7, 2009 \*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EARL C. GLAUDE, SR., | No. C08-04317 HRL |
| Plaintiff,<br>v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| ROBERT M. GATES, SECRETARY, DEPARTMENT OF DEFENSE AGENCY, DEFENSE COMMISSARY AGENCY, | **[Re: Docket No. 26]** |
| Defendant. | |

Pro se plaintiff Earl Glaude sued defendant Robert M. Gates, Secretary of the Department of Defense, for violations of various federal statutes relating to his employment with the Defense Commissary Agency ("DeCA"). In his complaint, Glaude alludes to violations of the Civil Rights Act of 1964 (42 U.S.C. §§ 1981, 1983, 2000e), the Rehabilitation Act of 1973 (29 U.S.C. §§ 791, 794(c)), and the Americans with Disabilities Act. Yet, he only raises two specific claims in the complaint: (1) that DeCA failed to comply with an Equal Employment Opportunity Commission ("EEOC") order in his favor, and (2) that DeCA retaliated against him for filing earlier discrimination complaints. Glaude testified in deposition that these two claims are the only ones at issue in this case. (Glaude Dep. 78.) Defendant now moves for summary judgment, and Glaude opposes the motion. Upon consideration of the moving and responding papers, as well as the arguments presented at the motion hearing, the court GRANTS defendant's motion.[1]

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

## LEGAL STANDARD

A court may grant a motion for summary judgment when the pleadings and discovery materials on file show no genuine issue of any material fact. Fed. R. Civ. P. 56(c). Material facts include those that could affect the outcome of the litigation, as identified by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, there must be enough evidence about disputed material facts that a reasonable jury could find in favor of the nonmoving party. *Id.* A mere "scintilla" of evidence supporting the plaintiff's claim is thus insufficient. *Id.* at 252. There is also no genuine dispute where the only evidence a party presents is "uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (internal quotations omitted).

When deciding a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). Yet, the party opposing the motion must provide specific facts showing there is a genuine issue and cannot simply rely on his pleadings. Fed. R. Civ. P. 56(e)(2). Even so, a court will liberally construe pleadings by pro se parties. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

## BACKGROUND

Broadly speaking, Glaude's allegations involve events that occurred over a ten-year period. As a result, a brief history is in order.

### A.   Glaude's Discrimination Complaints

Glaude began working as a cashier at a DeCA-operated commissary (i.e., a grocery store) in 1999. In 2001, he was diagnosed with plantar fasciitis in his right foot. He started using a stool at work, but his managers took it away and sent him home. (Scharf Decl. Exs. D, I.) Glaude consulted an Equal Employment Opportunity ("EEO") counselor at DeCA and filed a formal EEO discrimination complaint with the agency, but he did not assert a disability claim.[2] (Scharf Decl. Ex. C.) He then stopped going to work entirely in December 2001. (Scharf Decl. Ex. D.) DeCA

---

[2] Employment discrimination complaints made by federal employees go through a different process than complaints made by private-sector employees. Most strikingly, the agency against whom the discrimination is alleged investigates the complaint and makes the initial determination of whether discrimination occurred—not the EEOC. *See* 29 C.F.R. §§ 1614.101–.110.

performed an investigation of his allegations and released a final agency decision ("FAD") finding no discrimination. (Scharf Decl. Ex. F.)

In 2002, Glaude again sought EEO counseling and filed a second EEO complaint with DeCA. This complaint alleged discrimination based on race, sex, color, disability, age, and reprisal for his first EEO complaint. Glaude listed June Christian and several other individuals in DeCA's management at the time as those who discriminated against him. He indicated that the alleged discrimination took place from August 29, 2001 through March 2002 "to present." (Scharf Decl. Ex. E.) DeCA again found no discrimination after an investigation. This time, Glaude appealed the agency's FAD to the EEOC, but limited his appeal to the failure to accommodate charge. (Scharf Decl. Ex. I.)

The EEOC performed a de novo review of the record produced during DeCA's investigation.[3] It reversed the FAD, finding that DeCA had violated the Rehabilitation Act when it denied Glaude reasonable accommodation for his plantar fasciitis. It ordered that the agency reinstate him as a cashier with reasonable accommodation, give him back pay, restore any leave he used as a result of the lack of accommodation, train its management, and consider appropriate disciplinary action against the responsible managers. It also remanded the issue of compensatory damages to the agency for its determination. (Scharf Decl. Ex. I.) The EEOC's order became final in July 2006. (Scharf Decl. Exs. J, I.)

**B.     Glaude's Return to DeCA**

DeCA reinstated Glaude as a cashier in late August 2006. (Scharf Decl. Exs. L, M.) However, he soon began having disciplinary problems. His supervisors reported events where he failed to follow instructions, such as leaving his register without permission and refusing to answer the intercom. (Scharf Decl. Ex. O.) The store manager, James Howie, then told Glaude that DeCA's new management expected him to show up for work, perform his job duties, cooperate with

///

---

[3] As his appeal was pending, Glaude still had not returned to work. In June 2004, Christian sent him a memo proposing his removal from federal service for being absent without leave since December 2001. (Scharf Decl. Ex. G.) After he failed to provide additional medical documentation to support a leave request, DeCA removed him from federal service in November 2004. The Merit Systems Protection Board later affirmed the removal after Glaude's appeal. (Scharf Decl. Exs. H, D.)

1  management, follow the chain of command, and communicate with his supervisors before leaving
2  his register.  (*Id.*)

3        Yet, in November 2006, his supervisor, June Christian, issued him a letter about leaving the
4  workplace without permission, and she reminded him that he needed permission before taking
5  breaks to ensure proper work coverage.  (Scharf Decl. Ex. N.)  In January 2007, Christian issued
6  another memo concerning the proper use of unplanned sick leave, as he had claimed sick leave for
7  twenty-nine percent of his scheduled work days in his first four months back at work.  (Scharf Decl.
8  Ex. Q.)  She also completed a progress review for Glaude that stated he needed "improvement in all
9  areas," that he had a "very poor attitude and communication skills," and that he needed "to improve
10 in coming in for his scheduled shifts."  (Scharf Decl. Ex. R.)

11       Notwithstanding his progress review, Glaude continued to have disputes with management
12 over these same issues.  He received a letter of counseling about being absent without leave
13 ("AWOL"), and Christian later proposed a three-day suspension for being AWOL and for failing to
14 follow instructions.  (Scharf Decl. Exs. S, U.)  He then purportedly refused to sign safety training
15 documents when Christian asked him to and used foul language against her.  (Scharf Decl. Ex. Z.)
16 Glaude also failed to obey an order to not question patrons with authorization letters while working
17 temporarily at the commissary's identification desk.  (Scharf Decl. Ex. S.)

18       During this time, Glaude was also having problems with customers.  In January 2007, Howie
19 moved him from the front end of the commissary to the grocery department to do salvage tasks
20 because customers were complaining about Glaude.  (Scharf Decl. Ex. Z.)  In August 2007, after
21 returning to the front end, he allegedly yelled at a diabetic customer for running down an aisle in the
22 wrong direction to get to the bathroom.  When the customer told Glaude he planned to contact a
23 manager, Glaude told the customer to "go ahead." (Glaude Dep. 132.)  He later detained the same
24 customer for completing a customer comment card, and Christian was called to intervene.  (Scharf
25 Decl. Ex. V.)  At this point, Eric Firestone, the new store director, told human resources that he
26 wanted to remove Glaude from the identification desk so he could not harass customers.  (Scharf
27 Decl. Ex. V.)
28 ///

1   Glaude's problems upon his return to DeCA were not limited to disciplinary issues. Almost
2   immediately after he returned to work, he suffered a rotator cuff injury. His temporary assignments
3   to the identification desk to check the credentials of shoppers and to the grocery department for
4   salvage tasks came after he provided DeCA with medical documentation in November 2006
5   indicating that he could not use his left shoulder or lift anything over five pounds. (Scharf Decl. Ex.
6   P.) Although he did eventually return to cashier duties, in July 2007, he told DeCA that he was
7   precluded from being a cashier due to his shoulder injury and he stopped going to work. Shortly
8   thereafter, his doctor provided a work restriction letter stating that he could not lift, push, pull, or
9   reach overhead for objects weighing more than five pounds. DeCA then placed him on sick leave
10  status in August 2007. (Scharf Decl. Exs. P, Y1.)

11  In November 2007, Christian sent Glaude a letter informing him that the work restrictions
12  prevented him from performing the essential duties of a cashier, and that she had searched without
13  success for another available position that would accommodate him. She provided him with three
14  options: (1) return to full duties as a cashier after providing medical documentation releasing him
15  from his work restrictions, (2) remain on a recognized leave status until he was physically able to
16  perform the essential duties of a cashier, or (3) seek a medical retirement. (Scharf Decl. Ex. Y2.) In
17  December 2007, Glaude indicated to DeCA that he planned to request a disability retirement.
18  (Scharf Decl. Ex. Y2.) However, by June 2008, Glaude was still on sick leave status as he had
19  neither been released to return to duty nor had he filed for medical retirement. (Scharf Decl. Ex. P.)

20                                              **DISCUSSION**
21  **A.    Failure to Comply with EEOC Order Claim**
22  The EEOC has the power to order mandatory corrective action on a federal agency for
23  discrimination. 29 C.F.R. §§ 1614.501–02. If the agency fails to provide the ordered relief, the
24  employee for whom relief is intended may petition the EEOC for enforcement of the order.
25  § 1614.503(a). The employee may also file a civil action to enforce the order where (1) the EEOC
26  determines that an agency is not complying with a prior decision or (2) the agency has not submitted
27  a required compliance report. § 1614.503(g).
28  ///

5

1    Glaude has not alleged that DeCA failed to complete the substantive requirements of the
2    EEOC's order. Instead, he only said that DeCA "didn't break down anything" to him. (Glaude
3    Dep. 87.) Although there is no evidence that Glaude petitioned the EEOC for enforcement of the
4    order, the court may hear his claim as he is alleging that DeCA failed to provide him a required
5    report. *See* § 1614.503(g).

6    Glaude provided two letters from the EEOC as proof of DeCA's failure to provide a written
7    report. (Resp. to Compl. Exs. 1, 4.) However, Glaude misunderstands the purpose of these letters.
8    The letters—one dated approximately one week after the EEOC's decision in 2006 and the second
9    shortly after its 2008 decision concerning his appeal of compensatory damages—merely informed
10   DeCA that the EEOC would be monitoring its compliance and that DeCA would need to submit a
11   written report at a *later* date to confirm its compliance. (*Id.*)

12   On the other hand, the defendant provided evidence that DeCA did fully comply with the
13   EEOC's order. It produced two letters from the EEOC stating that it was ending compliance
14   monitoring because DeCA had provided the EEOC with "documentation sufficient to demonstrate
15   that it has taken the corrective action(s) ordered in the Commission's decision." The letters show
16   that Glaude was copied on both documents. (Scharf Decl. Exs. EE, FF.) Glaude has not provided
17   any other evidence that suggests DeCA did not comply with the EEOC's order in full, including
18   providing him with a written report. Without such a showing on this essential element of his claim,
19   there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
20   The court therefore GRANTS defendant's motion for Glaude's noncompliance claim.

21   **B.    Retaliation Claim**

22   Glaude's second claim alleges that after he returned to work in August 2006, he was only
23   allowed to work for "two months or more" and that DeCA "sent him home again, saying they could
24   not accommodate him, saying that he could not do the job." (Compl. 2:24–26.) Glaude asserts that
25   this action was reprisal for his 2001 and 2002 EEO complaints.

26   However, to establish federal subject-matter jurisdiction over Title VII discrimination
27   complaints, including those for retaliation, a plaintiff must first exhaust his administrative remedies.
28   *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004). Neither party raised the

6

1   question of subject-matter jurisdiction in their motion papers or during the motion hearing; it

2   appears that both sides accepted that Glaude could simply "piggyback" his retaliation claim to his

3   2002 complaint and went straight to the merits. (*See, e.g.*, Glaude Dep. 78.) Nevertheless, a federal

4   court may address a lack of subject-matter jurisdiction *sua sponte*. Fed. R. Civ. P. 12(h)(3).

5   To properly assess whether Glaude exhausted his administrative remedies, the court must

6   first determine what it is that Glaude needed to have done to bring a retaliation claim in federal

7   court. As mentioned earlier, federal employees do not assert employment discrimination claims in

8   the same manner as private-sector employees. Accordingly, an outline of the procedures that a

9   federal employee must follow to bring a Title VII complaint is warranted.

10   **1.     Procedures for Federal Employee Complaints under Title VII**

11   When a federal employee wishes to bring a Title VII claim against his employer, including

12   one for retaliation, he must follow specific procedures. 42 C.F.R. § 1614.103. These procedures

13   establish "complementary administrative and judicial enforcement mechanisms." *Brown v. Gen.*

14   *Servs. Admin.*, 425 U.S. 820, 831 (1976).

15   Each federal agency administers an Equal Employment Opportunity ("EEO") program to

16   identify and eliminate discrimination within the particular agency. § 1614.102. The agency's EEO

17   program is not operated by the EEOC.[4] If a federal employee believes he may have been

18   discriminated against, he must first consult one of the agency's EEO counselors within forty-five

19   days of the discriminatory act. § 1614.105. If the employee wishes to further pursue the matter

20   after counseling, he *must* file an EEO complaint with the agency he alleges discriminated against

21   him within fifteen days of receiving notice of his completion of counseling. § 1614.106(a)–(b);

22   *Brown*, 425 U.S. at 832.

23   Once the agency receives the complaint, it will conduct its own, impartial investigation of

24   the complaint. § 1614.106(e). The employee may amend his complaint to add related claims before

25   the agency's investigation ends. § 1614.106(d). Once the investigation is complete, the employee

26   has thirty days to request either a hearing with an Administrative Law Judge or an immediate final

---

[4] Although the acronyms are similar, it is important to clearly distinguish "EEO" activities, which occur at the agency level, from "EEOC" activities, which occur before the Equal Employment Opportunity Commission.

7

decision. § 1614.108(f). If the employee requests an immediate final decision, the agency will issue a Final Agency Decision ("FAD") within sixty days. The FAD must include notice of the employee's right to appeal the agency's FAD to the EEOC within thirty days or to file an appeal directly in federal district court within ninety days. § 1614.110. The employee may also file suit if the agency fails to take final action. § 1614.407; 42 U.S.C. § 2000e-16(c).

### 2. Exhaustion

The above procedures make it clear that a federal employee must first seek relief at the agency level before he may file an action for retaliation in federal court. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976) ("Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the [EEOC] or . . . within 30 days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the [EEOC]."). The purpose of this exhaustion requirement is to provide agencies with the opportunity to first resolve the complaint informally. *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002); *see also Kraus v. Presidio Trust Facilities*, No. 07-17177 slip op. 9485, 9497 (9th Cir. July 23, 2009).

There is no evidence that Glaude filed an EEO complaint with DeCA for any alleged retaliation that occurred after his return in August 2006. However, subject-matter jurisdiction extends to all claims within the scope of the investigation of an earlier complaint or an investigation that could "reasonably be expected to grow out of the charge." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004).[5] To determine whether a claim meets this standard, a court will consider factors such as "the alleged basis of the discrimination, dates of discriminatory acts specified in the charge, [and] perpetrators of discrimination named in the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).

Glaude's 2002 EEO complaint, which included a claim for retaliation, was for the time period "August 29, 2001 through March 2002 to present." (Scharf Decl. Ex. E.) DeCA's investigation of this complaint ended around April 2003. The EEOC's March 2006 order was based on DeCA's report of investigation and was further limited only to his disability claim.

---

[5] *Vasquez* involved a non-federal employee, so the EEOC performed the initial investigation.

8

Consequently, any examination of retaliation "to present" would have ended in 2003. Furthermore, of the people Glaude listed in his 2002 complaint as discriminating against him, it appears that only one—June Christian—was involved in the events that took place after Glaude returned to work in August 2006. Indeed, several of the events that Glaude claims are retaliatory in this case involved store managers who were not present during the investigation of his 2002 complaint.

Glaude also raises factual allegations in this case that were not part of his 2002 complaint. In 2003, DeCA could not have possibly investigated actions that happened after August 2006 because the events had not yet occurred. *See, e.g.*, Vasquez, 349 F.3d at 645 (finding no jurisdiction over a claim involving an event that the EEOC could not have reasonably investigated because it occurred after the investigation was complete). The EEOC's decision on appeal also happened well before his return and did not address retaliation in any way. Even construing Glaude's 2002 complaint with the "utmost liberality," *B.K.B*, 276 F.3d at 1100, his present retaliation claim is not within the scope of DeCA's prior investigation nor an investigation that could reasonably be expected to have grown out of his 2002 complaint. Because he did not file a separate EEO complaint with DeCA for these new events, Glaude failed to exhaust his administrative remedies and this court lacks subject-matter jurisdiction for his retaliation claim.

### 3.  Alternate Ground for Summary Judgment

Even if the court did have subject-matter jurisdiction, Glaude would have to show a genuine issue of material fact to survive summary judgment. DeCA asserts that it had legitimate, nondiscriminatory reasons for taking disciplinary action against Glaude and for placing him on non-pay, sick leave status. When the employer in a retaliation claim articulates a legitimate, nondiscriminatory reason for its actions, the plaintiff has the "ultimate burden" of demonstrating that the reason was pretextual. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

Glaude has provided no evidence that DeCA's disciplinary actions after his return in August 2006 were not legitimate and nondiscriminatory. Indeed, all he offers is that he was "very well experienced with people and things that people will do" (Glaude Dep. 117:15–23) and that his feelings and "instinct as a human being" supported that DeCA's actions were retaliatory (*id.* at

141:8–21).  Furthermore, during his deposition testimony, Glaude frequently took refuge in forgetfulness—but did not flatly deny that DeCA's disciplinary actions occurred as the agency described.  He claims that he "[does not] remember those things," but then admits that "there was a possibility" that each of his supervisors had criticized him as an employee, that he "probably had" letters warning him about disciplinary matters, and that he "could have" made statements that resulted in disciplinary actions.  (Glaude Dep. 106, 132–34.)

Glaude also does not hint of any evidence suggesting that DeCA's reasons for "sending him home" on sick leave were pretextual.  There is no dispute that his shoulder injury precluded him from performing the essential duties of a cashier.  DeCA told Glaude in a November 2007 letter that it was unable to accommodate his physical limitations, and he does not challenge that explanation.  Nor does he claim (much less provide evidence) that DeCA actually had positions available that met his work restrictions that it nevertheless refused to give him in retaliation.

Consequently, Glaude has failed to show a genuine issue of material fact that DeCA's articulated reasons for taking disciplinary action against him and for placing him on sick leave were pretextual.  As a result, even if this court had subject-matter jurisdiction, his retaliation claim would on this record not survive summary judgment.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT defendant's motion for summary judgment is GRANTED.  The clerk shall enter judgment and close the file.

Dated: August 7, 2009

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

10

**C 08-04317 Notice will be electronically mailed to:**

James A. Scharf       james.scharf@usdoj.gov, mimi.lam@usdog.gov

**Notice will be sent by other means to:**
Earl C. Glaude
8096 Juniper Avenue
Newark, CA 94560-2704

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**